MENAUGH, ADMINISTRATRIX, v. BEDFORD BELT RAIL-
WAY COMPANY ET AL.

[No. 19,259.    Filed May 28, 1901.]

CARRIERS.—*Freight Train.—Passenger.—Railroads.*—In an action
for personal injury resulting in death, the evidence showed that de-
fendant was operating a short line of railroad to a stone quarry;
that decedent boarded a coach attached to a train of cars loaded
with stone, without direction or invitation, and after riding a short
distance the conductor requested him to get on the car behind
the engine, as he desired to leave the coach on the side-track.   No
fare was demanded, and there was no evidence that decedent pre-
sented himself as a passenger or that defendant ever accepted
passengers on such train.   *Held,* that decedent was not a passenger.
*pp. 21-24.*

NEGLIGENCE.—*Railroads.—Directing Verdict.— Contributory Negli-
gence.*—In an action against a railroad company for personal injury
resulting in death, the evidence showed that decedent boarded. a
coach attached to a train of cars loaded with stone, without direc-
tion or invitation, and after riding about three-quarters of a mile
the conductor requested him to get on the car immediately behind
the engine, as he desired to leave the coach on the side-track,
whereupon the deceased took a seat on the tool-box attached to the
rear of the tender to avoid the cinders, and the engine and tender
left the track, causing death of decedent.   *Held,* that the decedent
was guilty of contributory negligence and that the court properly
instructed the jury to return a verdict for defendant.   *pp. 23, 24.*

TRIAL.—*Evidence.—Objection.—Exception.*—In order to save an ex-
ception to the exclusion of testimony, the offer to prove must be
made before the objection is sustained.   *pp. 24, 25.*

From Lawrence Circuit Court; *W. H. Martin,* Judge.

Action by Lizzie R. Menaugh as administratrix against
the Bedford Belt Railway Company and another for dam-
ages on account of the death of her husband.   From a judg-
ment for defendants, plaintiff appeals.   *Affirmed.*

*J. R. East, R. H. East* and *McHenry Owen,* for appel-
lant.

*T. J. Brooks, W. F. Brooks* and *F. M. Trissal,* for appel-
lees.

HADLEY, J.—April 18, 1899, appellee, the Southern Indiana Railroad Company, operated the Bedford Belt Railway, a short line of railroad running from the city of Bedford into the stone quarrying district. At the date given, appellant's decedent, who was her husband, boarded an empty passenger coach standing on the main track in front of a locomotive at the station called Oolitic, the locomotive having behind it about twelve cars, chiefly flats, loaded with stone. Decedent entered the coach without direction or invitation from any employe of the company, the conductor at the time being up the road superintending the making up of the train. One other man entered the same coach. It was an irregular train that was run when and as often as was required to haul out the loaded stone cars to the main railroad lines, generally running daily, but sometimes but twice a week. When the train started for Bedford, the conductor got upon the same coach, it being pushed by the engine. He expressed neither assent nor dissent to the two occupants riding upon the train. He neither requested nor received fare from either of them. Upon arriving at Salt Creek yards about three-fourths of a mile distant from Oolitic the conductor said to the two men: "You fellows go and get on the car behind the engine. We are not going to take the coach to town." The two men went to and boarded the car behind the engine, which was loaded with stone. The conductor went to the rear of the train. After siding the coach, the train proceeded, and, being annoyed by sparks and cinders from the locomotive, decedent suggested to his companion that he was an experienced "railroader" and that the tool-box attached to the rear of the tender was a good place to avoid the cinders, and the two thereupon, of their own motion, and without the knowledge or consent of the conductor, left the car to which they had been directed, and proceeded to the tool-box, slightly elevated the lid by placing iron links under it, and then sat upon it, with their backs to the tender. While in this position the locomotive and tender

left the track, rolled down an embankment, and appellant's decedent received injuries whereof he died.

This suit was brought by the administratrix for the use of herself as widow, and their children, alleging a negligent causing of the death of her intestate. Demand $10,000. Appellant having produced evidence tending to prove the above facts, upon appellee's motion the court directed the jury to return a verdict for the defendants. This action of the court presents the principal question for decision.

This case is of a class that is purely statutory, and cannot be maintained without showing that the deceased might have maintained the action, had he lived, for the injuries resulting from the same act or omission. §285 Burns 1894, as amended, Acts 1899, p. 405; *Kauffman* v. *Cleveland, etc., R. Co.,* 144 Ind. 456, and cases cited.

If the deceased had lived and brought this action it would have been necessary for him to show that the appellees had accepted him as a passenger, and owed him the duty of safe carriage. In the absence of anything to the contrary, we probably must presume that the appellees were operating a commercial railroad, and that in consideration of the rights and franchises granted them by the State they had imposed upon them the duty of a common carrier of passengers. But this implied duty cannot be extended so far as to require the appellees to carry passengers on all trains. Within reasonable limits they had the right to restrict passengers to certain trains prepared for their accommodation, and might properly exclude them from trains designed exclusively for the transportation of freight. *Smith* v. *Louisville, etc., R. Co.,* 124 Ind. 394; *Indianapolis, etc., R. Co.* v. *Kennedy,* 77 Ind. 507, 510; Elliott on Railroads, §§1392, 1573.

While a railroad company may agree to carry passengers upon its freight train, and when it does so agree, and accepts a passenger on such train, it is bound to the same degree of care for the safety of such passenger as when upon a train designed for passengers, modified only by the differ-

ing manner consistent with the usual and practical operation of such train, yet in the absence of an established custom, or some sort of notice that amounts to an invitation, when a person gets aboard a train composed of cars obviously designed for and loaded with stone and other goods, in the absence of the conductor and other employes of the company, he will be presumed to be a trespasser, and the burden rests upon him to prove that he rightfully took passage.

Under the evidence produced, the train taken by the deceased was an irregular freight train running when and as often as sufficient loaded cars accumulated at the quarries. Its coming and going was a matter of chance. Its purpose, to haul empties into, and loads out of the quarries. There is no evidence that it was the custom, or that this train ever before had a passenger coach attached to, or in any way connected with it, in its passage between Bedford and the quarries. There was no evidence that appellees, by any rule, regulation, or custom, accepted passengers on this train. No evidence that the deceased presented himself as a passenger, or that he was in any way invited or recognized as such by the conductor. It is shown that he rode with the conductor three-fourths of a mile to the siding where the coach was left, without anything being said as to destination or fare; that the conductor at no time requested fare, and none was paid or proffered; that when the coach was placed on the siding, and the decedent was directed to get on the car in the rear of the engine, the conductor went his way to the rear of the train, and gave decedent no further attention, manifestly regarding him and his companion as riding upon the train at sufferance, and not as passengers. Going aboard the car loaded with stone, in the rear of the engine, after leaving the coach by invitation of the conductor, did not of itself constitute the decedent a passenger under the circumstances. *Smith* v. *Louisville, etc., R. Co.*, 124 Ind. 394, 397; *Evansville, etc., R. Co.* v. *Barnes*, 137 Ind. 306, 312.

Even if the decedent had been a passenger, appellant shows by her evidence that she is not entitled to recover. She produced uncontradicted evidence that after the train started towards Bedford the decedent and his companion, seeking to avoid the cinders from the locomotive, voluntarily, and without the consent or knowledge of the conductor or other employes of the appellees, left the car to which they had been directed and went to the tender, and having adjusted the lid, located themselves on the tool-box attached to the rear of the tender, and were occupying this position when the accident occurred. This was a place so palpably unfit for passengers to occupy, and naturally so unsafe for them to be during the movement of the train as to amount to conduct of a character which the court will pronounce negligence as matter of law. *Coyle* v. *Pittsburgh, etc., R. Co.,* 155 Ind. 429, and cases cited.

The rule declared in *Oleson* v. *Lake Shore, etc., R. Co.,* 143 Ind. 405, at p. 409, is as follows: "Where the evidence given at the trial with all the inferences which the jury may justifiably draw from it is insufficient to support a verdict for the plaintiff so that such verdict, if returned, should be set aside, the court is not bound to submit the case to the jury but may direct a verdict for the defendant." See authorities there cited. The evidence brings the case within this rule.

The record discloses that during the examination of the witness McLaughlin, the plaintiff inquired of the witness if he had ridden upon the train in controversy prior to the date of the accident. The defendants objected. The court sustained the objection, and the plaintiff excepted. After taking an exception to the ruling of the court, the plaintiff made an offer to prove the facts to which the witness would have testified if he had been permitted to answer, to which offer the defendants' further objection was sustained and exception reserved by the plaintiff.

The offer to prove came too late. It has been repeatedly

held by this court that the only mode of saving a question for review on the exclusion of testimony is this: The examiner propounds his question. The opposite party objects to the question. This forms an issue for the court to decide. Before the court pronounces his judgment, the examiner in support of his question, and for the enlightenment of the judge, must state to the court what the witness on the stand will testify if permitted to answer. With the information thus obtained, the court rules, to which ruling the losing party at the time excepts. The matter is then fully closed. A subsequent offer to prove has nothing to rest upon, and amounts to nothing. *Gunder* v. *Tibbits,* 153 Ind. 591, 607; *Whitney* v. *State,* 154 Ind. 573, 579; *Rinkenberger* v. *Meyer,* 155 Ind. 152.

Judgment affirmed.