# FOR PUBLICATION



FILED
Nov 05 2013, 5:46 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ANTHONY J. OLIVEIRA**
The Law Office of B. Joseph Davis, P.C.
Muncie, Indiana

ATTORNEY FOR APPELLEE:

**BRANDON E. MURPHY**
Cannon & Bruns
Muncie, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| HEATHER HERREN, | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 18A04-1304-SC-162 |
| | ) | |
| JERRY DISHMAN, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE DELAWARE CIRCUIT COURT
The Honorable Joseph M Speece, Master Commissioner
Cause No. 18C04-1301-SC-68

November 5, 2013

OPINION - FOR PUBLICATION

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Respondent, Heather Anne Herren (Herren), appeals the small claims court's Order of Replevin granting canine ownership to Appellee-Plaintiff, Jerry Dishman, Jr. (Dishman).

We affirm.

## ISSUE

Herren raises one issue on appeal, which we restate as: Whether the small claims court erred by failing to confer full faith and credit to an out-of-state protection order and granting canine ownership to Dishman.

## FACTS AND PROCEDURAL HISTORY

At the center of this case is a dog named Sofie (Sofie), a black and white Chihuahua-Rat Terrier mix breed. In the latter part of 2010, Dishman acquired Sofie from his former girlfriend. In March of 2011, Herren and Dishman became acquainted through the Internet. Three months later, in June of 2011, Herren moved into Dishman's apartment in Cowan, Indiana. In September 2011, Dishman was arrested, and Herren moved out, taking Sofie with her. Dishman was incarcerated for one month, during which time Herren kept Sofie. When Dishman was released, the Sheriff's Department, at Dishman's request, contacted Herren and directed her to return Sofie to Dishman; Herren complied. Shortly thereafter, Herren and Dishman reconciled their relationship.

Herren and Dishman lived together for another year, at which point Herren moved to North Carolina. Dishman remained in Indiana until Herren secured employment and a

residence that permitted pets. In October 2012, Dishman—along with Sofie— relocated to North Carolina to be with Herren. Less than two months following Dishman's move to North Carolina, the relationship ended. On November 19, 2012, Dishman took Sofie and moved back to Indiana.

A dispute over Sofie's custody ensued. On December 5, 2012, more than two weeks after Dishman moved out, Herren filed for a Domestic Violence Protective Order (Protective Order) in the District Court of Chowan County, North Carolina (North Carolina Court) because Dishman had threatened Herren that he would return to North Carolina "to 'gut' [her] and throw her in a canal." (Appellant's App. p. 31). Dishman also "threaten[ed] to slit [Sofie's] throat." (Appellant's App. p. 31). On December 31, 2012, the North Carolina Court concluded that "[t]here is a danger of serious and immediate injury" and granted the Protective Order. (Appellant's App. p. 32). The Protective Order, which is in effect until December 31, 2013, "granted the care, custody, and control of any animal owned, possessed, kept, or held as a pet by either party or minor child residing in the household" to Herren. (Appellant's App. p. 32). Herren thereafter travelled to Indiana and presented the Protective Order to the Muncie Police Department. The police retrieved Sofie from Dishman's apartment, and Herren transported her back to North Carolina.

On January 11, 2013, Dishman filed a Complaint for Replevin with the small claims court in Delaware County, Indiana. Dishman claimed that Herren had wrongfully taken his property and demanded possession of Sofie, as well as damages in the amount of $1,000. On February 8, 2013, Herren filed a motion to dismiss, asserting that the North

3

Carolina Court had already awarded her custody of Sofie. The small claims court summarily denied this motion.

On Valentine's Day of 2013, the small claims court conducted a bench trial; Herren represented herself and Dishman was represented by counsel. Herren and Dishman both testified that they were entitled to Sofie as her rightful owner. Herren asserted that in August 2011—just before the couple's first break-up—Dishman had agreed that Herren could keep Sofie, which Dishman denied, stating he would never have given Sofie away. During her case-in-chief, Herren attempted to present "the whole case file" from the North Carolina Court as evidence that she had received "legal custody of the dog." (Transcript pp. 28-29). The small claims court denied admission of the file, agreeing with Dishman that it did not "matter[ ] whether there was a protective order in North Carolina." (Tr. p. 29). The same day, the small claims court issued an Order of Replevin, declaring Dishman to be Sofie's owner.

Herren now appeals.[1] Additional facts will be provided as necessary.

DISCUSSION AND DECISION

I. *Standard of Review*

"Judgments in small claims actions are 'subject to review as prescribed by relevant Indiana rules and statutes.'" *Eagle Aircraft, Inc. v. Trojnar*, 983 N.E.2d 648, 657 (Ind. Ct. App. 2013) (quoting Ind. Small Claims Rule 11(A)). Indiana has specific rules for small

---

[1] On August 12, 2013, Dishman filed a Motion to Dismiss and/or Strike Portions of Appellant's Appendix with this court. On September 17, 2013, the motions panel denied Dishman's motion to dismiss and ordered that his motion to strike be held in abeyance for ruling by the writing panel. By a separate order issued on today's date, we deny the motion to strike for the reasons discussed in Part II(B).

claims cases, but the Indiana Rules of Trial Procedure will generally apply "unless the particular rule in question is inconsistent with something in the small claims rules." *Bowman v. Kitchel*, 644 N.E.2d 878, 879 (Ind. 1995). In accordance with Trial Rule 52(A), the findings or judgments rendered in a bench trial must be upheld unless clearly erroneous. Deference to the small claims court is essential as the "trials are designed to speedily dispense justice by applying substantive law between the parties in an informal setting." *Vance v. Lozano*, 981 N.E.2d 554, 557 (Ind. Ct. App. 2012); *see* Ind. Code § 33-28-3-5(d). This court considers the evidence and related inferences in a light most favorable to the judgment, presuming that the small claims court applied the law correctly and giving "due regard to the trial court's opportunity to judge the credibility of the witnesses." *Eagle Aircraft, Inc.*, 983 N.E.2d at 657. "However, this deferential standard does not apply to the substantive rules of law, which are reviewed de novo just as they are in appeals from a court of general jurisdiction." *Id.* (internal quotation marks omitted). The burden of proof in a small claims civil suit is the same as it would be had the case been filed in a general trial court. *Bonecutter v. Discover Bank*, 953 N.E.2d 1165, 1169 (Ind. Ct. App. 2011), *trans. denied.*

## II. *Full Faith and Credit*

Herren claims that the small claims court erred in its judgment "because state and federal statute[s] require that the . . . North Carolina Protective Order giving custody of the dog to Herren be conferred full faith and credit in Indiana." (Appellant's Br. p. 7). Under the United States Constitution, "Full Faith and Credit shall be given in each State to the Public Acts, Records and Judicial Proceedings of every other State." U.S. Const. art IV, §

5

1.  A state court's judgment "should be afforded the same credit, validity and effect in every other court of the United States which the judgment had in the state where it was pronounced." *In re L.C.*, 659 N.E.2d 593, 597 (Ind. Ct. App. 1995), *trans. denied*; *cert. denied*, 117 S. Ct. 2515 (1997).

The principal of full faith and credit has been codified in Indiana, requiring that authenticated "[r]ecords and judicial proceedings . . . shall have full faith and credit given to them in any court in Indiana as by law or usage they have in the courts in which they originated." I.C. § 34-39-4-3(b).  Additionally, Indiana's Civil Protection Order Act (CPOA) specifies that full faith and credit must be conferred upon an out-of-state protection order, so long as the protection order "is facially valid." I.C. § 34-26-5-17(c). Within her overall argument that the small claims court should have conferred full faith and credit to the Protective Order, Herren presents three sub-arguments that the small claims court erred:  (A) by denying her motion to dismiss Dishman's Complaint for Replevin; (B) by excluding the North Carolina Court file from evidence; and (C) by failing to examine the facial validity of the Protective Order.  In general opposition to Herren's specific claims, Dishman asserts that the Protective Order is not a final judgment entitled to full faith and credit.

### A.  *Denial of Herren's Motion to Dismiss*

Herren first claims that the small claims court erred because giving full faith and credit to the Protective Order would demand granting her motion to dismiss Dishman's complaint.  While the small claims court did not explain its reason for denying Herren's motion to dismiss, Dishman contends that it properly did so based on Herren's failure to

sign the motion. Trial Rule 11(A) provides a trial court with discretion to strike an unsigned pleading or motion "as sham and false." Ind. Trial Rule 11(A). In this case, Herren typed—rather than signed—her name below the contents of the motion. The Indiana Supreme Court has previously concluded that the validity of a signature is not contingent upon signing with any "specific instrument." *Johnson v. State*, 622 N.E.2d 172, 174 (Ind. 1993). Herren's typed name is therefore a sufficient signing to certify the veracity of her motion.

Dishman also asserts that the small claims court was correct to deny Herren's motion because Herren "did not state a legal basis for dismissal." (Appellee's Br. p. 5). Herren's motion expressed that dismissal is appropriate because "[t]he case was already heard in [the North Carolina Court]." (Appellant's App. p. 34). Although Herren's motion may not replicate the language of Trial Rule 12(b)(6), it is clear that this argument for dismissal is premised upon a failure to state a claim upon which relief may be granted. For dismissal motions of this type, our review is de novo, and we consider the complaint in the light most favorable to the non-moving party. *Watson v. Auto Advisors, Inc.*, 822 N.E.2d 1017, 1023 (Ind. Ct. App. 2005), *trans. denied*. Our supreme court has previously stated that, in small claims cases, "a motion to dismiss is appropriate if the 'brief statement of the claim' reveals that, as a matter of law, the plaintiff cannot prevail." *Niksich v. Cotton*, 810 N.E.2d 1003, 1006 (Ind. 2004). In Herren's dismissal motion, she references the North Carolina Court documents as evidence that the issue of canine custody had already been resolved. Under Trial Rule 12(b)(6), if

7

> matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in [Trial] Rule 56. In such case, all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by [Trial] Rule 56.

T.R. 12(b)(6). Because the small claims court did not explain its basis for denying Herren's motion or receive arguments for summary judgment, we presume that it excluded the matters extraneous to the pleadings and denied Herren's request for dismissal based solely on the face of Dishman's complaint, which—if taken as true—presents a legally sufficient basis for relief. We therefore conclude that the small claims court did not err in denying Herren's motion to dismiss.

## B. *Exclusion of Evidence*

Herren next claims that the small claims court erred by excluding the North Carolina Court documents. Specifically, she contends that the small claims court should not have rejected the evidence without first evaluating whether the Protective Order was facially valid—a due process requirement of full faith and credit. *See* I.C. § 34-26-5-17(b). A small claims court has broad discretion in determining whether to admit or exclude evidence. *Barnett v. State*, 916 N.E.2d 280, 286 (Ind. Ct. App. 2009), *trans. denied*. We will only reverse an admissibility decision for a "manifest abuse of the trial court's discretion resulting in the denial of a fair trial." *Elrod v. Brooks*, 910 N.E.2d 231, 233 (Ind. Ct. App. 2009).

Dishman counter-argues that because Herren "failed to make an adequate offer of proof[,]" she has waived the right to challenge the evidentiary ruling. (Appellee's Br. p. 5). To preserve the challenge of a trial court's exclusion of evidence for appellate review, a

8

party must, through an offer of proof, make "the substance of the evidence" known to the trial court, as well as identify the grounds for admissibility and relevancy of the testimony. *Arhelger v. State*, 714 N.E.2d 659, 664 (Ind. Ct. App. 1999). An examination of our State's case law reveals that an offer of proof is necessary to preserve error when the excluded evidence is *testimony*. *See Menaugh v. Bedford Belt Rwy. Co.*, 60 N.E. 694, 696 (Ind. 1901); *Taflinger Farm v. Uhl*, 815 N.E.2d 1015, 1018 (Ind. Ct. App. 2004); *Bedree v. Bedree*, 747 N.E.2d 1192, 1195-96 (Ind. Ct. App. 2001), *trans. denied*.

This case is distinct because Herren sought to admit tangible court documents from another court proceeding, which—contrary to unconstrained and unpredictable witness testimony—the small claims court could have inspected to ascertain their substance. Furthermore, when Herren attempted to introduce the evidence, she presented her justification for its admission:

> All the paperwork [Dishman] submitted which is the signed [sic] he submitted here. All the vet bills, everything else, and including, I think I already filed where with the restraining order they gave me legal custody of the dog because of everything that had happened, if that's okay, including that he'd been served, that he knew that the ownership of the dog was in question. Custody of the dog was in question, everything. I have it all.

(Tr. pp 28-29). Because Herren conveyed the substance of the evidence and proffered possible grounds for admission and relevance, we find Herren has not waived this issue.

Dishman also contends that the North Carolina Court evidence is not relevant. Evidence is relevant if it "tends[ ] to make the existence of any fact that is of consequence to the determination of the action more probable or less probable." Ind. Evidence Rule 401. More particularly, Dishman argues that the Protective Order does "not by its language

9

apply to Sofie." (Appellee's Br. p. 8). Because the Protective Order grants Herren "the care, custody, and control of any animal owned, possessed, kept or held as a pet by either party or minor child *residing in the household*[,]" Dishman insists that Sofie is outside the scope of the Protective Order because *he*, as Sofie's *owner*, did not reside in the household at the time Herren filed for the Protective Order. (Appellee's Br. p. 8 (Appellee's emphasis)).

We disagree with Dishman's interpretation. The descriptor "residing in the household" also applies to Herren, as a party, regardless of ownership of Sofie. This court established long ago that a person may have the right to possess a chattel "without having the ultimate legal title to the property." *Whitehead v. Coyle*, 27 N.E. 716, 717 (Ind. Ct. App. 1891). Therefore, even if—as the small claims court found—Dishman is the legal owner of Sofie, Herren may still have the right to possess the dog under the terms of the Protective Order. Whether the Protective Order is entitled to full faith and credit in Indiana is dependent upon a finding of its validity, and the North Carolina Court documents are material to this assessment. We thus find that such evidence is relevant.

Notwithstanding our finding that the small claims court erred in excluding the evidence, we will uphold its decision absent a manifest abuse of discretion resulting in the denial of a fair trial. *See Elrod*, 910 N.E.2d at 233. It is an abuse of discretion if the small claims court's decision "is clearly against the logic and effect of the facts and circumstances before the court." *Williams v. State*, 782 N.E.2d 1039, 1045 (Ind. Ct. App. 2003), *trans. denied*. In this case, the small claims court rejected Herren's evidence without assessing

10

the facial validity of the Protective Order as required by Indiana Code section 34-26-5-17.[2]

In so doing, the small claims court impeded Herren's due process rights. *See Morton v. Ivacic*, 898 N.E.2d 1196, 1199 (Ind. 2008) (affirming tenet of due process that the "opportunity to be heard" consists of the "opportunity to present every available defense"). Therefore, we find it was a manifest abuse of discretion for the small claims court to reject the evidence without first evaluating the Protective Order's facial validity.

### C. *Facial Validity*

Herren's final claim is that the small claims court erred by discarding the authority of the Protective Order "without any examination into whether it was facially valid." (Appellant's Br. p. 10). Herren argues that, at a minimum, if the small claims court "wish[ed] to disregard the full faith and credit it was required to give the [Protective] [O]rder under state and federal law, it should have undertaken an investigation into the adequacy of due process." (Appellant's Br. p. 10).[3] The CPOA specifies that full faith and credit must be conferred upon a protection order issued by a court of another state, so long as the protection order "is facially valid." I.C. § 34-26-5-17(c). "A facially valid foreign protection order is prima facie evidence of its validity." I.C. § 34-26-5-17(b). This court will find that a foreign protection order is facially valid if it:

(1) identifies the protected person and the respondent;
(2) is currently in effect;
(3) was issued by a state or tribal court with jurisdiction over the:
    (A) parties; and

---

[2] Under the Indiana Code, an Indiana court must accord full faith and credit to an out-of-state protection order that is "facially valid." I.C. § 34-26-5-17.

[3] Herren also argues that the small claims court should have conferred full faith and credit to the Protective Order under 18 U.S.C. § 2265(a). Because this case can be resolved under the State law, we do not address Herren's federal law arguments.

11

> (B) subject matter; under the law of the issuing state or Indian tribe; and
>
> (4) was issued after a respondent was given reasonable notice and an opportunity to be heard sufficient to protect the respondent's right to due process. In the case of an ex parte order, notice and opportunity to be heard must be provided within the time required by state or tribal law and within a reasonable time after the order is issued sufficient to protect the respondent's due process rights.

I.C. § 34-26-5-17(a). We note that there is no precedent in Indiana to guide our review of the mandate that out-of-state protection orders receive full faith and credit. Based on the plain and ordinary meaning of the CPOA, we must assess whether the Protective Order is facially valid in order to determine whether it is entitled to full faith and credit.

The first two elements of Indiana Code section 34-26-5-17(a) are clearly satisfied because the Protective Order identifies Herren and Dishman as the protected individual and respondent, respectively. Also, the Protective Order expires on December 31, 2013, so it was in effect at the time of the bench trial and has remained in force throughout this appeal. As to the third element, subject-matter jurisdiction exists by virtue of a state law endowing the North Carolina Court with "original jurisdiction over . . . [a]ny action for a domestic violence protective order." N.C. Gen. Stat. § 50B-2. For the North Carolina Court to have personal jurisdiction over a non-resident—as Dishman was at the time the Protective Order was issued—there must be authority under the State's long-arm jurisdiction statute, as well as sufficient minimum contacts between Dishman and North Carolina. *Wells Fargo Bank, N.A. v. Affiliated FM Ins. Co.*, 666 S.E.2d 774, 777 (N.C. Ct. App. 2008). North Carolina's long-arm statute confers personal jurisdiction over an individual "[i]n any action claiming injury to person or property . . . within or without this

State arising out of an act or omission within this State by the defendant." N.C. Gen. Stat. § 1-75.4(3). Here, the issuance of the Protective Order arose "directly out of [Dishman's] activities within and to the [S]tate of North Carolina." *Fox v. Gibson*, 626 S.E.2d 841, 844 (N.C. Ct. App. 2006). While living in North Carolina, Dishman threatened Herren's life, and when he left for Indiana, Dishman "forcibly removed" Sofie from Herren's house. (Appellant's App. p. 16). "Due process requires that the defendant have minimum contacts with the state in order to satisfy traditional notions of fair play and substantial justice." *Cooper v. Shealy*, 537 S.E.2d 854, 857 (N.C. Ct. App. 2000 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945))). In this case, Dishman lived with Herren in North Carolina for approximately two months, and, even after returning to Indiana, Dishman communicated numerous threats to Herren. *See Fox*, 626 S.E.2d at 845 (finding non-resident's "telephone conversations, e-mails, and sexual relations" with North Carolina resident created sufficient minimum contacts). Furthermore, "North Carolina has a strong interest in protecting its citizens from local injury caused by" non-residents. *Cooper*, 537 S.E.2d at 858. We find the North Carolina Court had personal and subject matter jurisdiction.

In considering the final element of facial validity—whether Dishman had reasonable notice and an opportunity to be heard—we look to the North Carolina Court documents. On December 5, 2012, Herren filed for an order of protection, and the North Carolina Court immediately issued an *ex parte* order, effective for six days. Dishman was not served with notice of this order or a hearing date. However, on December 11, 2012, a subsequent *ex parte* protective order was issued, to be in effect until a hearing on December

13

20, 2012. With this order, the North Carolina Court served Dishman with a summons, via certified mail to his Muncie address, informing him that an *ex parte* order had been granted, of the date and time of the hearing, and of his opportunity to file an answer to Herren's complaint. Dishman did not respond or attend the hearing. When the Protective Order was issued on December 31, 2012, Dishman was again served with notice and a copy of the Protective Order. Because we find that the North Carolina Court afforded Dishman the requisite due process prior to entering its final order, the Protective Order is facially valid and is entitled to full faith and credit.

### D. *Finality of Judgment*

The purpose of the full faith and credit principle is to remedy the risk, inevitable in a nation of states each having an independent judicial system, that several states "will exercise their power over the same case or controversy, with the uncertainty, confusion, and delay that necessarily accompany relitigation of the same issue." *Underwriters Nat'l Assurance Co. v. N.C. Life & Accident & Health Ins. Guar. Ass'n*, 455 U.S. 691, 703-04 (1982). As such, it is generally required that a judgment be a "final judgment" in order to merit full faith and credit. *Lee v. DeShaney*, 457 N.E.2d 604, 607 (Ind. Ct. App. 1983).

Dishman claims that the Protective Order "is temporary and inherently modifiable[,] . . . [and] clearly not a final judgment over ownership of the property." (Appellee's Br. p. 7 (internal citation omitted)). He reasons that the doctrine of comity—rather than full faith and credit—is applicable in this case. Under the comity doctrine, an Indiana court has the discretion to dismiss a case as a matter of courtesy and convenience when there are *pending* proceedings in an out-of-state court, but it is not constitutionally obligated to do so. *MH*

14

*Equity Managing Member, LLC v. Sands*, 938 N.E.2d 750, 756 (Ind. Ct. App. 2010), *trans. denied*. Dishman cites cases such as *Ventura County v. Neice*, 434 N.E.2d 907 (Ind. Ct. App. 1982), and *Kniffen v. Courtney*, 266 N.E.2d 72, 75 (Ind. Ct. App. 1971), to argue that the judgment is not final because an Indiana court may modify the Protective Order for "good cause shown." (Appellee's Br. p. 7). We find his reliance on these cases—which are subject to specific statutes for child custody and support—is misguided. Not only is Dishman's assertion that any court other than the North Carolina Court has the power to modify the Protective Order unfounded,[4] the case at hand is governed by its own unique statute, which specifies that protection orders must receive full faith and credit and does not require that an order be final or unmodifiable.

Dishman also contends that the Protective Order is not a final judgment because it is not *res judicata*. He maintains that, because "property can be temporarily awarded without regard to ownership[,]" the issue of Sofie's ownership was not previously litigated, and thus the small claims court was not required to confer full faith and credit. (Appellee's Br. p. 8). To succeed in a replevin action, a plaintiff must be "entitled to the immediate possession of the property in controversy." *Whitehead*, 27 N.E. at 717. The small claims court granted an Order of Replevin in Dishman's favor, thereby affirming his immediate right to possess Sofie. We find that this is "mutually inconsistent" with a facially valid Protective Order granting custody to Herren and "is precisely the situation the Full Faith and Credit Clause was designed to prevent." *Underwriters Nat'l Assurance Co.*, 455 U.S.

---

[4] The Protective Order states, "Only the Court can change this order[,]" and, when referring to the enforcement authority of other state courts, "court" is lower-cased. (Appellant's App. p. 30).

at 715. We have already established that the Protective Order is facially valid. Therefore, despite Dishman's comity or *res judicata* arguments, the Protective Order is entitled to full faith and credit by virtue of State law and must be enforced *to the same extent* that it would have been in North Carolina. *See Gardner v. Pierce*, 838 N.E.2d 546, 551 (Ind. Ct. App. 2005).

### III. *Timing of the Protective Order*

Although we find that the Protective Order is entitled to enforcement in this State according to its terms, we do not alter the small claims court's factual determination that Dishman never gave the dog away to Herren, thus rendering Dishman the dog's *owner*. We agree with Dishman that the Protective Order's award of custody does not negate his status as Sofie's owner. Instead, we discern the pivotal issue to be whether, because the Protective Order went into effect more than one month after Dishman and Sofie returned to Indiana, Sofie could *still* have been considered "owned, possessed, kept or held as a pet by" Herren at that time. (Appellant's App. p. 32).

Herren does not dispute the small claims court's finding that Dishman never gave ownership of Sofie to Herren. Also, beyond her general claim that she was entitled to Sofie under the authority of the Protective Order, Herren has not provided further argument to justify her right to the custody of a dog that was not in her possession for more than a month prior to the date the Protective Order was issued. Accordingly, under the terms of the Protective Order, Herren is not entitled to possession of Sofie.

### CONCLUSION

Based on the foregoing, we conclude that the small claims court clearly erred by failing to accord full faith and credit to the out-of-state Protective Order, but because Herren neither owned nor possessed Sofie at the time of the Protective Order's issuance, Herren is not entitled to custody of the dog.

Affirmed.

ROBB, C. J. and KIRSCH, J. concur